**VACATE AND AFFIRM IN PART, REVERSE IN PART, AND REMAND and Opinion Filed October 21st, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01077-CV**

**JOSE LUIS VARELA AS REPRESENTATIVE OF THE ESTATE OF MARIA SOLEDAD VARELA DE LOPEZ (DECEASED), CARMEN HERNANDEZ, JOSE HERNANDEZ, MARICELA SILVA, ELIGIO SILVA, AND PEDRO ROSTRO, Appellants**
**V.**
**ZAVALA PLUS, LLC, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-07336**

## MEMORANDUM OPINION

Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Garcia

We deny appellants' motion for rehearing and appellee's motion for rehearing. On our own motion, we withdraw our March 26, 2024 memorandum opinion and vacate our judgment of that date. This is now the opinion of the Court.

This is a personal-injury case arising from a bus accident in Mexico. The trial judge granted defendant Zavala Plus, LLC's motion to apply foreign law to several issues in the case and then later granted a take-nothing summary judgment in favor

of Zavala Plus. Plaintiffs appeal, challenging both of these rulings. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

### A. Factual Allegations

Appellants alleged the following facts in their Third Amended Petition, which was their live pleading at the time of final judgment

Appellee Zavala Plus has its principal place of business in Dallas County, Texas. It operates and does business as a motor-vehicle carrier and common carrier. It has a U.S. Department of Transportation number and a Texas DMV certificate number. Its sole owner and manager is its president, Francisco J. Zavala.

On May 6, 2018, a bus owned by Zavala Plus and driven by Hector Manuel Aldaba Lozano (Aldaba) was involved in a roll-over accident in Mexico near San Tiburcio. It was or had been raining, and immediately before the crash Aldaba was driving the bus over 70 miles per hour on a federal highway with a 55 mile-per-hour speed limit. At the time of the accident, all 42 passengers on the bus were traveling to destinations in the United States. The passengers included appellants Carmen Hernandez, Eligio Silva, Maricela Silva, and Pedro Rostro. Maria Soledad Varela de Lopez was also a passenger on the bus and was originally a plaintiff in this suit, but a suggestion of her death was filed before final judgment, and the administrator of her estate is an appellant as her estate's representative. Finally, appellant Jose

–2–

Hernandez was not a passenger on the bus, but he sued as a plaintiff for loss-of-consortium damages based on Carmen Hernandez's alleged injuries.

## B.     Procedural History

This personal-injury lawsuit began in May 2019 when Maria Soledad Varela de Lopez sued Zavala Plus. In January 2020, the other appellants joined the suit as plaintiffs via amended petition. The amended petition also added a second defendant, Zavala Plus S.A. de C.V. ("Zavala Mexico"), which was allegedly a Mexican entity. According to Zavala Plus, Zavala Mexico was never served with citation. Appellants eventually nonsuited all claims against Zavala Mexico.

In July 2020, Zavala Plus filed a traditional motion for summary judgment that relied principally on two arguments: (1) Zavala Plus was not operating the bus at the time of the accident, and the bus driver was not hired, supervised, or employed by Zavala Plus, and (2) Mexican law applied to all issues in the case, and the plaintiffs were not entitled to relief under Mexican law. Appellants filed a response, and the trial judge eventually denied the motion.

In June 2021, appellants filed a second amended petition. They asserted negligence and gross-negligence liability theories.

In July 2021, Zavala Plus filed a motion entitled "Defendant's Request to Apply Mexican Law Pursuant to Tex. R. Evid. 203." Appellants filed a response. The trial judge conducted a two-day evidentiary hearing on the motion. Zavala Plus's expert witness testified that under Mexican law, the laws of the Mexican state

of Zacatecas would govern claims arising from the bus accident. The trial judge later signed an order ruling that "the substantive laws of Mexico" would apply to several liability and damages issues in the case.

A few days after the trial judge's choice-of-law ruling, appellants filed a third amended petition. In that pleading they asserted that Texas substantive law applied to the case, and they continued to plead their claims as claims for negligence, negligence per se, and gross negligence. Appellants also filed a motion for reconsideration of the trial judge's choice-of-law order. The trial judge eventually denied the motion for reconsideration.

In November 2021, Zavala Plus filed a second motion for summary judgment asserting that (1) appellants' claims as pleaded under Texas law were not allowed under Zacatecan law and (2) if the trial judge construed appellants' live petition to plead the liability theories available under Zacatecan law, all of those theories failed because appellants had no evidence that Zavala Plus employed the bus driver. Appellants filed a response.

In December 2021, a suggestion of death was filed for plaintiff Maria Soledad Varela de Lopez. The document requested the substitution of Jose Luis Lopez Varela in her place as administrator of her estate. In January 2022, Zavala Plus filed a plea in abatement alleging that Jose Luis Lopez Varela had not adequately shown his standing and capacity to prosecute the suit on the estate's behalf. On April 26, 2022, the trial judge signed an agreed order abating the prosecution of the estate's claims.

On June 30, 2022, the trial judge signed an order granting summary judgment for Zavala Plus. Appellants filed a request for findings of fact and conclusions of law solely as to the trial judge's choice-of-law order and her order denying appellants' motion for reconsideration. The trial judge denied the request by written order. Appellants also timely filed a motion for new trial on August 1. The motion for new trial was overruled by operation of law on September 13. TEX. R. CIV. P. 329b(c).

Appellants timely filed a notice of appeal on September 28. On October 13, the trial judge signed an agreed order lifting the abatement of Lopez's estate's claims. The next day, the trial judge signed a modified order granting Zavala Plus's second summary-judgment motion. Substantively, the October 14 order is identical to the June 30 order.

## C.    Appellate Jurisdiction

Appellants note that the June 30 summary-judgment order was arguably not a final, appealable judgment because (1) it purported to grant summary judgment on the entire case, including the abated claims of Lopez's estate, and (2) under our precedents, a judicial action in an abated case that has not been reinstated is generally considered a "legal nullity." *See, e.g.*, *Amrhein v. La Madeleine, Inc.*, 206 S.W.3d 173, 175 (Tex. App.—Dallas 2006, no pet.). But they posit that any finality problem was cured when the trial judge later lifted the abatement and then again granted Zavala Plus summary judgment on the entire case.

–5–

We conclude that the June 30 summary-judgment order was a final, appealable judgment. A judgment is final and appealable if it disposes of all parties and claims then pending in the case. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). The June 30 order satisfies this test. Under our *Amrhein* opinion, the trial judge erred by granting summary judgment on Lopez's claims because the action had been abated as to those claims and had not been reinstated, but we conclude that this error did not prevent the judgment from being final. *See id*. at 204 ("Granting more relief than the movant is entitled to makes the order reversible, but not interlocutory."). Although *Amrhein* refers to a summary judgment rendered during an abatement as a "legal nullity," we did not conclude that the infirmity prevented the judgment from being final or defeated our appellate jurisdiction—we simply reversed the judgment and remanded for further proceedings. *See* 206 S.W.3d at 175; *accord Cruz v. Hernandez*, No. 05-19-00956-CV, 2021 WL 1588996, at *2 (Tex. App.—Dallas Apr. 23, 2021, no pet.) (mem. op.). In keeping with our precedents, we conclude that the erroneous granting of summary judgment against Lopez's estate during an abatement did not prevent the judgment from being final and appealable, and we have jurisdiction over this appeal.

As for the modified summary-judgment order that the trial judge signed on October 14, 2022, we agree with appellants that the trial court lost plenary power before signing that order. Appellants' motion for new trial was overruled by operation of law on September 13, 2022, so the trial court lost plenary power 30 days

–6–

later, on October 13, 2022. *See* TEX. R. CIV. P. 329b(e). Accordingly, the October 14 summary-judgment order is void and must be vacated. *See Polk v. La Hacienda Apt.*, No. 05-22-01236-CV, 2023 WL 2364974, at *1 (Tex. App.—Dallas Mar. 6, 2023, no pet.) (mem. op.) ("A judgment signed after the trial court's plenary power has expired is void."). We proceed to consider appellants' appeal as being from the June 30 summary judgment. *See In re C.R.C.*, No. 05-20-00125-CV, 2022 WL 16549070, at *3 (Tex. App.—Dallas Oct. 31, 2022, no pet.) (mem. op.) (reviewing timely appeal from final judgment after concluding that subsequent judgment was signed after plenary power had expired).

## II.   ISSUES PRESENTED

Appellants present two issues on appeal. Their first issue argues that the trial judge erred by applying Mexican substantive law to their claims. Their second issue argues that the trial judge erred by granting summary judgment.

## III.   ANALYSIS

### A.   Issue One: Did the trial judge err by ruling that Zacatecan law governed appellants' claims?

Before turning to appellants' substantive choice-of-law arguments, we address a preliminary argument concerning the trial judge's failure to make findings of fact and conclusions of law.

**1. Preliminary question: Did the trial judge err by denying appellants' request for findings of fact and conclusions of law?**

We consider appellants' last argument first: whether the trial judge erred by denying appellants' request for findings of fact and conclusions of law on the choice-of-law issue. Appellants argue that the trial judge had a duty to grant their timely request for findings and conclusions because the judge's choice-of-law ruling was based on an evidentiary hearing. Zavala Plus responds that (1) the judge did not err because findings and conclusions serve no purpose when the ruling is reviewed de novo on appeal and (2) alternatively, any error is harmless because the trial judge's reasoning is irrelevant on appeal and appellants are not prevented from properly presenting their case.

"In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296. The rule gives parties a right to findings of fact and conclusions of law in cases finally adjudicated after a conventional trial on the merits before the court. *IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). A trial judge may properly issue findings and conclusions in certain other circumstances, but parties are not entitled to them. *Id.*

This case was resolved on summary judgment, not after a conventional trial on the merits before the court. Thus, even if findings in support of the choice-of-law ruling would be proper, appellants were not entitled to them as of right. *See id.* Accordingly, we reject appellants' argument.

## 2. Applicable Law and Standard of Review

Texas courts apply the rules found in the *Restatement (Second) of Conflicts of Laws* to resolve choice-of-law questions. *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 116 (Tex. App.—Dallas 2020, no pet.); *see also Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000).

Under the *Restatement* approach, we first determine whether Texas has a statutory choice-of-law rule on point. *Stevenson*, 608 S.W.3d at 119, 121–23. If there is no statutory directive and the laws of two or more interested states conflict, we apply the *Restatement*'s "most significant relationship" test to determine which state's law controls. *Id.* at 117. In tort cases, *Restatement* § 145(1) prescribes that the parties' rights and liabilities with respect to an issue "are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." *Id.* at 118 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (AM. L. INST. 1971)); *see also Hughes Wood Prods.*, 18 S.W.3d at 205 (noting that, in tort cases, choice of law is decided on an issue-by-issue basis). Section 145(2) sets forth a non-exclusive list of forum contacts to be considered in the most-significant-relationship analysis. *Stevenson*, 608 S.W.3d at 118. Section 6 provides a list of general policy factors relevant to the most-significant-relationship determination. *Id.*

Beyond §§ 6 and 145, other sections of the *Restatement* provide more specific choice-of-law rules for common issues. Texas courts frequently apply those

provisions. *See Hughes Wood Prods.*, 18 S.W.3d at 206 n.2 (noting that the Texas Supreme Court "has often applied more specific sections of the *Restatement* to address particular choice of law issues"). For example, in personal-injury cases, § 146 provides that the parties' rights and liabilities are governed by the law of the state where the injury occurred unless § 6 dictates that another state has a more significant relationship to the occurrence and the parties. RESTATEMENT § 146. As for damages issues in tort cases, § 171 provides simply that § 145 supplies the rule for determining the measure of damages. *Id.* § 171.

Because the bus accident giving rise to this case happened in Mexico, we note also that the *Restatement* assigns a special meaning to the term "state": "As used in the Restatement of this Subject, the word 'state' denotes a territorial unit with a distinct general body of law." *Id.* § 3. A comment further explains that each state of the United States is a "state" for *Restatement* purposes. *Id.* § 3 cmt. a. Evidence in the record shows, and appellants do not dispute, that the Mexican legal system is structured like the United States' system in that Mexico has both a body of federal law and a separate body of law in each of the 32 Mexican states. We conclude that each state of Mexico is a distinct "state" for *Restatement* purposes.

The ultimate question of which state's law governs an issue is a question of law for the court to decide. *Hughes Wood Prods.*, 18 S.W.3d at 204. Thus, we review the trial judge's choice-of-law decision itself de novo. *Stevenson*, 608 S.W.3d at 116. However, the forum contacts that must be considered in the most-significant-

relationship analysis require a factual inquiry. *Hughes Wood Prods.*, 18 S.W.3d at 204; *see also* RESTATEMENT § 145(2) (calling for consideration of facts including the parties' domiciles, residences, nationalities, places of incorporation, and places of business). Accordingly, when a summary-judgment movant seeks the application of another state's law, the movant must satisfy its burden of proof with respect to the fact questions necessary to the choice-of-law decision. *Hughes Wood Prods.*, 18 S.W.3d at 205. The movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. Evidence favorable to the nonmovant will be taken as true, and all reasonable inferences must be drawn and any doubts resolved in the nonmovant's favor. *Id*.

### 3. Did the trial judge erroneously ignore a statutory choice-of-law directive?

Appellants argue that the trial judge erred by ignoring a statutory choice-of-law directive, specifically Texas Civil Practice and Remedies Code § 71.031(c). That section addresses claims for injury or death caused by a wrongful act, neglect, or default that took place in a foreign state or country. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a). Subsection (c) provides, "The court shall apply the rules of substantive law that are appropriate under the facts of the case." *Id*. § 71.031(c). Appellants acknowledge that we have construed § 71.031(c) to incorporate the *Restatement*'s most-significant-relationship test. *See Stevenson*, 608 S.W.3d at 121– 22.

Appellants are correct that the first step in resolving a choice-of-law question is determining whether Texas has a controlling statute on point. *See id*. at 117; RESTATEMENT § 6. Appellants also correctly point out that Zavala Plus did not cite or rely on § 71.031(c) in its choice-of-law motion. Instead, Zavala Plus relied solely on the most-significant-relationship test as set forth in the *Restatement* and as applied by Texas appellate courts. However, appellants quoted § 71.031(c) on the first page of their response to Zavala Plus's choice-of-law motion, and their attorney referenced the statute at the hearing as well. Thus, there is no reason to assume that the trial judge ignored § 71.031(c) in making her choice-of-law ruling.

In any event, appellants do not explain how they could have been harmed by the alleged error, given that § 71.031(c) simply incorporates the most-significant-relationship test. *See Stevenson*, 608 S.W.3d at 121–22. Thus, even if the trial judge completely overlooked § 71.031(c) and proceeded directly to the most-significant-relationship test, that oversight was harmless.

### 4. Did the trial judge err by failing to distinguish between Mexican federal law and Zacatecan state law?

Next, appellants argue that the trial judge erred in making her choice-of-law ruling because Zavala Plus did not adequately prove which body of Mexican law—Mexican federal law or Zacatecan state law—should apply to this case. Appellants also point out that the trial judge's choice-of-law order specified that "the substantive laws of Mexico" applied to a host of legal issues, and they argue that Zavala Plus

failed to prove either (1) that Mexican federal law governed these issues or (2) that Zacatecan law was materially the same as Mexican federal law.

Zavala Plus responds that its expert witness (1) presented both Mexican federal law and Zacatecan law to the trial judge and (2) opined that Zacatecan law would govern this case and Mexican federal law would not because no federal interest was involved in the controversy.

We reject appellants' argument. Zavala Plus is correct that its expert evidence showed that Zacatecan law rather than Mexican federal law would apply to the issues in this case. We note that Zavala Plus's expert on Mexican law acknowledged that one treatise on Mexican law opines that Mexican federal law applies to accidents that occur on federal highways in Mexico, but he disagreed with that opinion and explained why it was wrong. This disagreement does not preclude summary judgment because the parties do not dispute that all pertinent foreign law was properly submitted in evidence. *See Long Distance Int'l, Inc. v. Telefonos de Mex., S.A. de C.V.*, 49 S.W.3d 347, 351 (Tex. 2001). Resolution of the disagreement remains a question of law subject to de novo review. *Id.*

Moreover, we conclude that the trial judge actually applied Zacatecan law rather than Mexican federal law in the summary-judgment proceedings. Although the judge's choice-of-law order referred generally to "the substantive laws of Mexico," her summary-judgment order referred specifically to the Civil Code of

Zacatecas. Nothing in the record suggests that the trial judge intended to apply Mexican federal law when she granted summary judgment in this case.

Based on the record as a whole, we conclude that the trial judge applied Zacatecan law, as Zavala Plus urged in its second summary-judgment motion, and did not apply Mexican federal law. *Cf. In re Estate of Moore*, No. 05-18-00019-CV, 2019 WL 2098477, at *5 (Tex. App.—Dallas May 14, 2019, pet. denied) (mem. op.) ("[I]f an order is ambiguous, it should be considered in light of the record and, in particular, the motion on which it was granted.").

### 5. Did the trial judge err in determining that Zacatecan law applied to appellants' claims because Zavala Plus failed to show any conflict between Zacatecan law and Texas law?

In their next two arguments, appellants contend (1) Zavala Plus did not prove a true conflict between Zacatecan law and Texas law on any issue, and (2) even if Zavala Plus identified some conflicts, the evidence showed that Zacatecan law and Texas law are similar. Zavala Plus responds that the evidence showed a conflict because applying Zacatecan law rather than Texas law would affect the outcome of appellants' claims. We conclude that the law of Zacatecas conflicts with the law of Texas in some relevant respects.

Texas courts generally determine whether there is a conflict between the laws of potentially relevant jurisdictions before applying the most-significant-relationship test. *See Stevenson*, 608 S.W.3d at 123–24. *But cf. B/K Series Invs., LLC v. ECOM Series Invs., LLC*, No. 05-22-00115-CV, 2023 WL 2821876, at *8–9 (Tex. App.—

–14–

Dallas Apr. 7, 2023, pet. denied) (mem. op.) (concluding that Texas law applied to fraud claim under most-significant-relationship test and thus not analyzing whether Delaware's fraud law conflicted with Texas's). The determination of a foreign jurisdiction's law is ultimately a question of law, even though that determination is generally based on a presentation that "resembles the presentment of evidence." *Long Distance Int'l, Inc.*, 49 S.W.3d at 351; *see also* TEX. R. EVID. 203.

We conclude that the relevant parts of the record—consisting mostly of affidavit and deposition testimony from Zavala Plus's expert witness David Lopez— showed that the laws of Zacatecas and Texas conflicted on some issues that included the following:

- Zacatecan law would not allow any recovery by appellant Jose Hernandez, who was not a passenger on the bus and sued solely for loss-of-consortium damages based on alleged injuries to his wife, who was a passenger. Texas law would allow Hernandez's claim. *See Whittlesey v. Miller*, 572 S.W.2d 665, 668 (Tex. 1978).

- Zacatecan law does not recognize joint enterprise as a basis for imposing vicarious liability. Texas law does. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000).

- The recoverable damages in a case like this one are more limited under Zacatecan law than they are under Texas law. Under Zacatecan law, the greatest possible recovery for loss of earning capacity is the equivalent of the injured person's wages for 1,065 days. This amount, plus past and future medical expenses directly and immediately caused by the accident, are recoverable under Zacatecan law as "material damages." Under Zacatecan law, other non-pecuniary injuries such as pain and suffering will support an award of "moral damages," but those damages are capped at one-third the amount of material damages. Similar caps

on recoverable actual damages in personal-injury cases do not exist under Texas law.

- Mexican law does not allow the recovery of punitive damages except in airplane-crash cases. Lopez further opined that if Zacatecan courts were to hold that Zacatecas's law allowed the recovery of punitive damages, those damages would be considered moral damages and thus subject to the cap of one-third of material damages. Texas law allows the recovery of punitive or exemplary damages under a broader array of circumstances, subject to different caps. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.003–.009.

The liability theories available under Zacatecan law differed from those available under Texas law in other ways as well. For example, Lopez testified that Zacatecas would recognize only three potential claims in favor of appellants: (1) subjective liability, (2) objective liability, and (3) common-carrier liability. These claims have the following features:

- A subjective-liability claimant must show that the defendant committed an illicit act, meaning an act that violated a substantive law of Mexico such as a traffic regulation or a law governing the commercial transportation of passengers. Thus, a subjective-liability claim is narrower than a general Texas negligence claim, which does not require a showing of an illegal act.

- A plaintiff can assert an objective-liability claim against a defendant who makes use of a dangerous mechanism and causes damage to another, even if the defendant's conduct is not illicit. Lopez said that objective-liability claims are akin to strict-liability claims in Texas, and that the bus involved in the accident at the heart of this case would constitute a dangerous mechanism within the meaning of the Zacatecan objective-liability statute. Thus, Zacatecan law allows a kind of strict-liability claim to persons injured in bus crashes when Texas law would not.

- Finally, Zacatecas law creates a claim specifically against common carriers for injuries caused by their drivers and means of transport. Lopez described this common-carrier claim as a quasi-contract theory. The statute of limitations for subjective-liability and objective-liability claims is two years, while the statute of limitations for a common-carrier claim is six months.

Another difference between Zacatecan law and Texas law concerns causation and damages. Under Zacatecan law, damages can be recovered only if they are a direct and immediate consequence of the defendant's act. Under Texas law, by comparison, recoverable tort damages generally consist of the damages necessary to place the plaintiff in the position he or she would have occupied absent the defendant's tortious conduct, with the caveat that consequential or special damages must be both foreseeable and directly traceable to the tortious act. *See J&D Towing, LLC v. Am. Alternative Ins. Corp.*, 478 S.W.3d 649, 655 (Tex. 2016).

Finally, Lopez testified that the law of respondeat superior vicarious liability is the same in Zacatecas and Texas.

We conclude that the law of Zacatecas conflicts with the law of Texas in some material respects, both as to liability issues and as to damages.

**6.   Did the trial judge err by ruling that Zacatecan law applies to numerous issues in this case?**

Next, appellants argue that the trial judge erred by ruling that Zacatecan law applies to numerous issues in this case. As previously noted, we review this ruling by applying the summary-judgment standard to any fact questions about contacts

with the relevant forums and by reviewing the ultimate choice-of-law ruling de novo. *See Hughes Wood Prods.*, 18 S.W.3d at 204–05.

### a.    The Alleged Inadequacy of Zavala Plus's Presentation

Appellants first argue that the trial judge's choice-of-law ruling was erroneous because Zavala Plus insufficiently analyzed the contacts identified in *Restatement* § 145 and the policies listed in *Restatement* § 6 for each discrete issue in the case. Zavala Plus responds that (1) the record does not support appellants' contention and (2) the argument is irrelevant because this Court reviews the ruling de novo.

We disagree with appellants. Zavala Plus's choice-of-law motion discussed both § 145 and § 6 of the *Restatement*, and it recognized that Texas choice-of-law rules require an issue-by-issue approach to choice of law. The motion separately addressed liability issues and damages issues. Appellants cite no authority requiring choice-of-law motions to meet any particular threshold of legal analysis, and we have found none. Accordingly, we reject appellants' argument.

### b.    The § 145 Factors

We next review the evidence concerning the § 145 factors. *See* RESTATEMENT § 145(2)(a)–(d).

***The place where the injury occurred***. There is no dispute that the bus accident and passenger injuries involved in this case occurred in the state of Zacatecas. Although appellants characterize this fact as "fortuitous," we disagree. The passengers aboard the bus were traveling from Mexico to various points in the

United States. Thus, the fact that the bus was in Zacatecas when the accident occurred was not fortuitous, i.e., was not the result of chance rather than design. *See fortuitous*, THE NEW OXFORD AMERICAN DICTIONARY (2001).

***The place where the conduct causing the injury occurred***. The conduct that was the most direct and immediate cause of appellants' injuries was that of the bus driver, Aldaba,[1] and there is no dispute that his conduct that allegedly caused the accident occurred in the state of Zacatecas.

Appellants argue that Zavala Plus itself also committed conduct that caused their injuries and that it did so in Dallas County, Texas. This conduct allegedly included employing Aldaba, entrusting the bus to Aldaba, failing to properly control Aldaba, failing to establish an adequate safety program, failing to establish and enforce adequate policies for its drivers, and negligently supervising and retaining Aldaba. Zavala Plus responds that (1) appellants' allegations are generally unsupported by any evidence and (2) in any event this *Restatement* factor focuses on the vehicle operator's conduct and not on more remote steps.

We agree with Zavala Plus that this *Restatement* factor focuses on the immediate cause of the injuries rather than more remote causes. *See Perkins v. Dynasty Grp. Auto*, No. 08-01-00493-CV, 2003 WL 22810452, at *3 (Tex. App.—

---

[1] Appellants alleged that "Hector Manuel Aldaba Lozano" was driving the bus at the time of the accident. Their summary-judgment evidence included an admission by Zavala Plus that "Hector Manuel Aldaba" was driving the bus at the time of the crash.

El Paso Nov. 25, 2003, no pet.) (mem. op.) (where plaintiffs were injured in auto accident in Texas, conduct causing the injuries occurred in Texas, even though defendant originally entrusted vehicle to plaintiffs in Florida). Accordingly, even though appellants alleged Texas conduct by Zavala Plus that contributed to causing the accident, we conclude that this factor weighs in favor of the state of Zacatecas.

***The parties' domicile, residence, nationality, place of incorporation, and place of business***. Zavala Plus concedes that it is organized under the laws of Texas and has its principal place of business in Texas. Appellants assert that they are residents of Oklahoma, Kansas, and Texas, but Zavala Plus disputes that any appellant resides in Texas. The record supports Zavala Plus's position. According to appellants' live petition, each appellant resides in either Oklahoma or Kansas, and we see no evidence that any appellant was a Texas resident at the time of the accident.

***Place where the parties' relationship, if any, is centered***. Appellants argue that the fourth factor favors Texas because (1) some passengers on the bus (although not appellants) were traveling to destinations in Texas, (2) no passengers were traveling to a destination in Mexico, (3) the bus tickets bore Zavala Plus's name and logo, and they listed locations and telephone numbers "en USA" (as well as some "en Mexico"); and (4) Zavala Plus admitted that it sold the tickets.

Zavala Plus counters that the parties' relationship was centered in Zacatecas because (1) appellants pleaded that at least some of them bought their bus tickets in

Zacatecas on the date of the accident, (2) appellants boarded the bus in Zacatecas, and (3) the entire trip, ending in the accident, took place in Zacatecas. Zavala Plus also denies that it admitted that it sold appellants their bus tickets, and after reviewing the record we agree with Zavala Plus on this point; we see no admission that Zavala Plus sold appellants their bus tickets.

Based on the facts and circumstances shown by the record, and considering only the two jurisdictions proposed by the parties, we conclude that the parties' relationships were not centered in Texas. Those relationships were commercial passenger–carrier relationships that began in Mexico and that were contemplated to end in a state other than Texas. Nothing in the record suggests that Zavala Plus's status as a Texas business entity or its headquarters in Texas played any role in forming the relationships. The fact that other bus passengers may have been traveling to Texas is irrelevant to *appellants'* relationships with Zavala Plus. And the fact that the bus tickets were marked with a "Zavala Plus" logo and listed several Zavala Plus locations and telephone numbers in Texas is offset by the fact that the bus tickets also bore the printed legend "Zavala Plus S.A. de C.V." across the bottom and listed several Zavala Plus locations and telephone numbers in Mexico (and in Oklahoma and Kansas). And, we note, the pre-printed text of the ticket is in Spanish.

We conclude that this factor has limited applicability in this case. But to the extent appellants' relationships with Zavala Plus had an identifiable geographic center, that center was not in Texas.

*Conclusion*. On the whole, the § 145 factors weigh in favor of Zacatecas as the state with the most significant relationship with this case.

### c. The § 6(2) Factors

Finally we consider the § 145 factors in light of the policy-oriented factors enumerated in § 6(2), which are:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

RESTATEMENT § 6(2)(a)–(g).

Most of these factors require no extended discussion in this case. The *Restatement* instructs that factors (d), (e), and (f) have "relative insignificance" in tort cases. *See id*. § 145 cmt. b; *see also id*. § 6 cmts. g–i. We agree; accordingly, we do not discuss those factors separately—although factor (e) is intertwined with factors (b) and (c), which we discuss below. We also need not dwell on factor (a), the needs of the "interstate and international systems." Regarding that factor, the *Restatement* suggests that choice-of-law rules should "further harmonious relations between states and . . . facilitate commercial intercourse between them." *Id*. § 6 cmt. d. Although appellants argue otherwise, we do not believe the choice between Texas and Zacatecan law in this personal-injury case arising from a one-vehicle accident

will significantly affect international relations or commerce. Finally, we discount the importance of factor (g), which is "ease in the determination and application of the law to be applied." *Id*. § 6(2)(g). The comments indicate that this factor refers to the goal of making choice-of-law rules simple and easy to apply. *See id*. § 6 cmt. j. We do not see how this factor should influence our choice between Texas and Zacatecan law. We further note, to the extent it is relevant, that determining and applying Zacatecan law is not so difficult as to weigh in favor of applying Texas law. *See Gutierrez v. Collins*, 583 S.W.2d 312, 320 (Tex. 1979) (noting that access to translations of Mexican statutes and cases was not a significant problem).

Thus, we focus on factors (b) and (c), which are Texas's and Zacatecas's policies and interests relevant to the issues presented in this controversy. *See* RESTATEMENT § 6(2)(b), (c); *see also id*. § 6(2)(e) (the basic policies underlying a field of law are relevant to the choice-of-law analysis). A state has a strong interest in protecting its residents from harm; accordingly, it also has a strong interest in adopting and enforcing liability rules that will, in its judgment, deter dangerous conduct within its borders. *See In re Oncor Elec. Delivery Co. LLC*, 630 S.W.3d 40, 43 (Tex. 2021) (orig. proceeding) (stating that tort law's fundamental purposes include deterring wrongful conduct, shifting losses to responsible parties, and fairly compensating deserving victims); RESTATEMENT § 145 cmt. c ("To some extent, at least, every tort rule is designed both to deter other wrongdoers and to compensate the injured person.").

At the same time, however, a state also has a strong economic interest in protecting its citizens and businesses from excessive liability claims. *See Toyota Motor Co. v. Cook.*, 581 S.W.3d 278, 287 (Tex. App.—Beaumont 2019, no pet.). Appellants suggest that Zacatecas has no interest in protecting a foreign company like Zavala Plus from excessive liability, but we disagree. A state has an interest in protecting non-resident businesses that engage in commerce within the state because that encourages economic activity that may benefit the state's residents as well as the businesses themselves. *See Vizcarra v. Roldan*, 925 S.W.2d 89, 92 (Tex. App.—El Paso 1996, no writ) (Mexico's policy of protecting businesses from excessive liability claims extended to Texas company that had a warehouse in Juarez and did business in Mexico).

### d. Zacatecan law governs the liability issues in this case.

Zavala Plus's summary-judgment motion attacked liability elements rather than damages elements. Accordingly, we focus our choice-of-law analysis on the liability issues in this case. *Cf. Toyota Motor Co.*, 581 S.W.3d at 284–92 (analyzing liability issues, compensatory-damages issues, and punitive-damages issues separately for choice-of-law purposes);

Pursuant to *Restatement* § 6(2)(b) and (c), we examine the interests Texas and Zacatecas have in supplying the liability rules to govern appellants' claims.

First, Zacatecas has a strong interest in regulating traffic and deterring dangerous driving on its roads. The accident happened in Zacatecas, and appellants'

physical injuries occurred in Zacatecas; these facts weigh strongly in favor of applying Zacatecan liability law. *See* RESTATEMENT § 145(2)(a), (b); *see also id.* § 145 cmt. d ("[S]ubject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection."); *id.* § 146.

Next, the domiciles of the parties, which are relevant under § 145(2)(c), do not weigh in favor of Zacatecas, but neither do they weigh solely in favor of Texas. Although Zavala Plus is a Texas company, thus giving Texas some interest in establishing liability rules to regulate Zavala Plus's conduct, none of the appellants are residents of Texas. Thus, the strong state interest in ensuring that its residents are protected from harm and compensated for their injuries is absent from this case. And the fact that Zavala Plus's alleged misconduct in Texas concerned its alleged operations in a different state further attenuates Texas's interest in regulating Zavala Plus's specific conduct in question.

Finally, as noted above, the parties' relationships were not centered in Texas to the extent that they can be said to have any center at all.

After considering the § 145 facts, we conclude that the relevant § 6(2) factors require application of Zacatecan law to the liability issues in this case. This includes the issue of whether appellant Jose Hernandez, who was not on the bus, can recover for loss of consortium based on injuries to his wife. *See* RESTATEMENT § 158(1)

(stating that § 145 determines whether a particular interest claimed by a person is entitled to legal protection).

We also conclude that Zacatecan law governs Zavala Plus's potential liability for others' conduct, such as under a theory of joint enterprise. Appellants pleaded that Zavala Plus was liable for Zavala Mexico's conduct under a joint-enterprise theory, but Lopez testified by affidavit that Zacatecas does not recognize joint enterprise as a valid theory for imputing liability. The *Restatement* instructs that § 145 governs the choice-of-law determination for liability for alleged "joint torts" by more than one person, *see* RESTATEMENT § 172(1), and we have concluded above that Zacatecas has the most significant relationship to this case for liability issues pursuant to § 145. Moreover, the *Restatement* specifies that joint-tort liability is usually governed by "the local law of the state where the injury occurred," *id*. § 172(2), further supporting our conclusion that Zacatecan law controls the availability of a joint-enterprise liability theory against Zavala Plus in this case.

### 7.    Conclusion

The trial judge did not err by ruling that Zacatecan law governs the liability issues addressed in Zavala Plus's choice-of-law motion. As discussed below, the final summary judgment was based entirely on liability issues, so we express no opinion as to whether the trial judge's choice-of-law ruling regarding recoverable damages was correct.

We overrule appellants' first issue.

**B. Issue Two: Did the trial judge err by granting summary judgment in favor of Zavala Plus?**

In their second issue, appellants challenge the trial judge's decision to grant a take-nothing summary judgment in Zavala Plus's favor. We sustain appellants' second issue in part as discussed below.

### 1. Summary of Claims and Summary-Judgment Grounds

In their live pleading, appellants asserted that Texas law governed all of their claims, and they asserted the following liability theories against Zavala Plus:

- Direct negligence in the form of negligent entrustment, hiring, training, and the like.

- Vicarious liability for Aldaba's negligence and negligence per se under theories of respondeat superior and agency.

- Joint liability with Zavala Mexico, under a joint-enterprise theory, for any negligence attributed to Zavala Mexico.

- Gross negligence. The only conduct appellants specifically identified as grossly negligent was Aldaba's conduct.

- Loss of consortium by appellant Jose Hernandez, based on injuries his wife Carmen allegedly suffered in the accident.

As to each of these liability theories, Zavala Plus sought summary judgment on the ground that the theory was not recognized by Zacatecan law.

Zavala Plus also moved for summary judgment to the extent the trial judge might construe appellants' live pleading as asserting the three liability theories available to appellants under Zacatecan law. Specifically, Zavala Plus asserted the following summary-judgment grounds as to those theories:

| | |
|---|---|
| Subjective liability | Appellants had no evidence (1) of a licit or illicit act by Zavala Plus or (2) that any act by Zavala Plus was a direct and immediate cause of appellants' injuries. |
| Objective liability | Appellants had no evidence that Zavala Plus was making use of the bus at the time of the accident. |
| Common-carrier liability | Appellants had no evidence that the bus driver was Zavala Plus's employee.<br><br>Additionally, any such claim by appellants Lopez and Rostro was time-barred by a six-month limitations period. |
| Respondeat superior | Appellants had no evidence that Aldaba was Zavala Plus's employee or that he was acting in the course and scope of employment for Zavala Plus at the time of the accident. |

The trial judge granted Zavala Plus's motion in every particular. She granted a traditional summary judgment as to Jose Hernandez's loss-of-consortium claim, appellants' "negligence-based claims pleaded under Texas law" including gross negligence, and appellants' claim of joint enterprise. She granted a no-evidence summary judgment as to respondeat superior liability, common-carrier liability, subjective liability, and objective liability under Zacatecan law. And she granted a traditional summary judgment based on the statute of limitations against appellants Lopez and Rostro on any common-carrier liability claim under Zacatecan law.

## 2.    Standard of Review

We review an order granting summary judgment de novo. *See Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019).

When we review a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's

claim or conclusively proved every element of an affirmative defense. *Alexander v. Wilmington Sav. Fund Soc'y, FSB*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Id*. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id*.

We review a no-evidence summary judgment under the same legal sufficiency standard as a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). We consider the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id*. The nonmovant bears the burden of producing summary-judgment evidence sufficient to raise a genuine issue of material fact as to each challenged element. *Id*.

### 3. Traditional Summary Judgment

Appellants make several arguments to support their premise that the traditional-summary-judgment rulings in Zavala Plus's favor were erroneous.

#### a. Global Argument

Appellants first argue that all of the traditional-summary-judgment rulings were erroneous because they were based on the trial judge's erroneous choice-of-law ruling. Because the trial judge correctly ruled that Zacatecan law governs the liability issues in this case, appellants' first argument under issue two fails.

We note that appellants do not otherwise specifically challenge the summary-judgment ruling that appellant Jose Hernandez's loss-of-consortium claim is not cognizable under Zacatecan law. Accordingly, we uphold the summary judgment against him.

### b. Joint Enterprise

Next, appellants give three reasons the trial judge erred by granting summary judgment on their theory that Zavala Plus was liable for Zavala Mexico's conduct under a joint-enterprise theory, even if Zacatecan law applies. We disagree for the following reasons.

First, appellants argue that summary judgment was improper because joint enterprise is a theory of liability rather than a cause of action. But they cite no authority for the premise that summary judgment cannot properly be granted on a theory of imputed liability like joint enterprise. Contrary to their position, we once reversed a summary judgment in part because the summary-judgment motions failed to address a pleaded joint-enterprise theory. *See Chevez v. Brinkerhoff*, No. 05-13-00572-CV, 2014 WL 7246798, at *8 (Tex. App.—Dallas Dec. 22, 2014, no pet.) (mem. op.); *see also Motloch v. Albuquerque Tortilla Co., Inc.*, 454 S.W.3d 30, 37 (Tex. App.—Eastland 2014, no pet.) (concluding that "summary judgment was proper on Motloch's claim under the joint enterprise theory"). Accordingly, we reject appellants' first argument.

Second, appellants argue that summary judgment was improper because Lopez testified that Zacatecan law recognizes a joint-tortfeasor theory of liability for damages caused by an entity's agents. Although appellants accurately describe Lopez's testimony, Lopez also clearly distinguished between an agency theory of liability, which is available under Zacatecan law, and the Texas version of joint-enterprise liability, which is not. Accordingly, we reject this argument.

Finally, appellants point out that they asserted a joint-venture theory of liability in their second amended petition and dropped it in their third amended petition, which was their live petition at the time of judgment. Although this is true, it is also irrelevant. Joint enterprise and joint venture are two different theories of liability. *See Chevez*, 2014 WL 7246798, at *7 n.10 (noting that joint enterprise and joint venture have different elements). Thus, the fact that appellants nonsuited their joint-venture theory did not bar Zavala Plus from seeking summary judgment on appellants' live joint-enterprise theory.

Thus, appellants have not shown that the traditional summary judgment on their joint-enterprise theory was erroneous.

### c. Gross Negligence

Next, appellants give two reasons that the trial judge erred by granting summary judgment on their gross-negligence claims even if Zacatecan law applies. We reject their arguments for the following reasons.

First, appellants contend that Zavala Plus did not ask the trial judge to apply Zacatecan law to their gross-negligence claims. We disagree. Zavala Plus's choice-of-law motion focuses on the *Restatement* analysis, but it mentions gross negligence as one of appellants' claims, argues that appellants' proper liability claim is one for objective liability under Mexican law, and asserts that punitive damages are unavailable under Mexican law. If there was any doubt as to Zavala Plus's contention about gross negligence, it was dispelled by Zavala Plus's summary-judgment motion, which said, "Gross negligence is not one of the three claims available to Plaintiffs under Zacatecan law." (Footnote omitted.)

Second, appellants argue that Zavala Plus failed to show a conflict between Texas and Zacatecan law relevant to gross negligence. Again, we disagree. Under Texas law, gross negligence requires a showing that the tortfeasor acted with greater culpability than simple negligence, and a gross-negligence finding can support an award of exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (defining gross negligence); *id.* § 41.003(a)(3) (providing that gross negligence can support an exemplary-damages award). Lopez testified about the three possible Zacatecan claims available to appellants on the facts they alleged in this case, and none of them corresponds to the § 41.001 definition of gross negligence. He also testified that Mexican law historically does not allow the recovery of punitive damages, and he opined that punitive damages are not currently allowed under Mexican law except in airplane-crash cases. Thus, Zavala Plus sufficiently showed

a conflict between Texas law and Zacatecan law with respect to a claim for gross negligence to justify a choice-of-law ruling on the matter.

Thus, appellants have not shown that the traditional summary judgment on their gross-negligence claims was erroneous.

### d. Negligence

Next, appellants argue that the trial judge erred by granting summary judgment on their negligence claims even if Zacatecan law applies because Zavala Plus did not show any conflict between Zacatecan law and Texas negligence law. We disagree.

Lopez testified that a Texas negligence claim is analogous to a subjective-liability claim under Zacatecan law. However, he explained in his deposition that one element of the claim is that the defendant undertook an act or omission contrary to law. This is not an element of a simple negligence claim under Texas law, although it would be an element of negligence per se. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam) ("To establish negligence, a party must establish a duty, a breach of that duty, and damages proximately caused by the breach."); *Ward v. ACS State & Loc. Sols., Inc.*, 328 S.W.3d 648, 652 (Tex. App.—Dallas 2010, no pet.) (negligence per se requires proof that the defendant violated a statute or ordinance designed to protect a class to which the plaintiff belongs, in addition to proximate cause and damages). Lopez also identified other differences between a Texas negligence claim and a Zacatecan subjective-liability claim. For

example, Zacatecan law employs a different causation standard, requiring the plaintiff's injury to be a "direct and immediate consequence" of the act complained of, and it imposes caps on compensatory damages that are not found in Texas law. Thus, appellants' argument that there is no "true conflict" between Zacatecan law and Texas negligence law is incorrect.

Appellants have not shown that the traditional summary judgment on their negligence claims was erroneous.

### e. Common-Carrier-Liability Claims

Zavala Plus also obtained a traditional summary judgment against appellants Lopez and Rostro based on the statute of limitations as to any common-carrier-liability claims they might be deemed to have asserted under Zacatecan law. Zavala Plus relied specifically on a six-month statute of limitations found in the Zacatecan Civil Code.

Appellants argue that this ruling was erroneous because (1) statutes of limitations are deemed to be procedural rules for choice-of-law purposes and Zavala Plus asked the trial judge to apply only substantive Zacatecan law, and (2) in any event, Texas's procedural rules apply in Texas courts.

We reject appellants' arguments. Appellants' contention that Zavala Plus did not ask the trial judge to apply "procedural" rules like the Zacatecan six-month limitations period for common-carrier-liability claims is simply incorrect. Zavala

Plus's summary-judgment motion specifically sought summary judgment against Lopez and Rostro based on that six-month limitations statute.

As for appellants' second argument, we conclude that Civil Practice and Remedies Code § 71.031 prescribes that the Zacatecan six-month limitations period applies to Lopez's and Rostro's common-carrier-liability claims. *See Stevenson*, 608 S.W.3d at 120 ("Section 71.031 is essentially a codified choice-of-law rule governing the timeliness of action."). That section applies when a death or injury case is brought in Texas court and "the wrongful act, neglect, or default causing the death or injury [took] place in a foreign state or country." CIV. PRAC. & REM. § 71.031(a). If the plaintiff is the resident of a foreign state or country, the plaintiff must begin the action "within the time provided by the laws of the foreign state or country in which the wrongful act, neglect, or default took place." *Id.* § 71.031(a)(3). According to appellants' live pleading, all appellants were residents of either Oklahoma or Kansas, and thus they were residents of foreign states. *See Owens Corning v. Carter*, 997 S.W.2d 560, 564–65 (Tex. 1999) (treating Alabama residents as residents of foreign states under § 71.031). Appellants present no argument to show that § 71.031(a)(3) does not require application of Zacatecas's statute of limitations to their common-carrier-liability claims on the facts of this case. Accordingly, we reject their argument that the Zacatecan limitations statute does not apply because limitations statutes are "procedural" rather than "substantive."

### 4. No-Evidence Summary Judgment

Next we consider the trial judge's rulings that there was no evidence to support respondeat superior liability or any of the three possible Zacatecan claims against Zavala Plus.

#### a. Threshold Question: Should we construe appellants' live petition as pleading claims under Zacatecan law?

As we previously noted, the trial judge ruled that Mexican law applied to appellants' claims. A few days later, appellants filed their final live pleading, their third amended petition, in which they invoked only Texas-law causes of action and averred that "Texas substantive law applies based on the facts and contacts of this case." Nevertheless, Zavala Plus's summary-judgment motion asserted that Zavala Plus was entitled to a no-evidence summary judgment to the extent appellants had pleaded claims under Zacatecan law, and the trial judge granted no-evidence summary judgment for Zavala Plus on those Zacatecan claims.

On appeal, appellants assert (1) they pleaded no claims under Zacatecan law, so the trial judge erred by granting summary judgment on unpleaded claims, and (2) alternatively, even if the trial judge could consider Zavala Plus's summary-judgment attacks on unpleaded Zacatecan-law claims, the trial judge erred on the merits by sustaining those attacks. Zavala Plus responds that the trial judge properly ignored the Texas labels that appellants assigned to their claims and properly treated appellants' third amended petition as pleading all three Zacatecan claims potentially available on the alleged facts: subjective liability, objective liability, and common-

carrier liability. In their reply brief, appellants again assert that unpleaded claims cannot support summary judgment, and they complain that Zavala Plus is asking this Court to construe appellants' live pleading in Zavala Plus's favor by construing it to plead claims under Zacatecan law.

The briefing thus raises a conundrum. Appellants deny that they pleaded any claims under Zacatecan law, and they urge us to reverse the trial judge's no-evidence summary-judgment rulings on that basis. But if we were to accept appellants' position and conclude that they pleaded only Texas-law claims, the no-evidence summary-judgment rulings might be erroneous, but we would nevertheless affirm the take-nothing judgment because we have already concluded that appellants have not shown error in the traditional summary judgment on their Texas-law claims. We do not believe this is what appellants intend us to do—particularly because appellants do argue in the alternative that they raised genuine fact issues to support their claims under Zacatecan law.

We conclude that construing the live petition in appellants' favor means treating it as pleading the claims properly available under the governing law in light of the facts pleaded, regardless of the labels appellants assigned to their claims. *See Stone v. Laws. Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex. 1977) (absent special exceptions, courts construe a petition liberally in the pleader's favor); *Jones v. Landry's Seafood Inn & Oyster Bar-Galveston, Inc.*, 328 S.W.3d 909, 913 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[A] court considers the substance, not

the label, of a claim to determine its nature."). And we agree with Zavala Plus that appellants' allegations in their live pleading, liberally construed, suffice to plead the claims available to them under Zacatecan law. Accordingly, we address appellants' alternative merits-based argument that the trial judge erred by granting no-evidence summary judgment on their claims under Zacatecan law.

### b.    Applicable Law and No-Evidence Grounds

Lopez testified that Zacatecan law recognizes three possible claims in favor of accident victims in appellants' position: (1) subjective liability, (2) objective liability, and (3) common-carrier liability. He also testified that the law of respondeat superior is the same in Zacatecas and in Texas. Thus, Zavala Plus would be vicariously liable for Aldaba's conduct if at the time of the accident Aldaba was Zavala Plus's employee and was acting in the course and scope of employment. *See G&H Towing Co. v. Magee*, 347 S.W.3d 293, 296 (Tex. 2011) (per curiam) ("Generally, a master is vicariously liable for the torts of its servants committed in the course and scope of their employment.").

Each of the three claims available under Zacatecan law requires a plaintiff to prove that the defendant's conduct caused injury to the plaintiff. For a subjective-liability claim, the plaintiff must prove that the defendant committed conduct that was illicit or against good customs and that the conduct caused damage to another. Alternatively, the plaintiff can prove that the defendant committed a licit act that caused damage to another, but in that case the rules for an objective-liability claim

apply. For an objective-liability claim, the plaintiff must prove that the defendant was making use of a dangerous mechanism (such as a bus) and thereby caused damages. And for a common-carrier-liability claim, the plaintiff must prove that the defendant was a common carrier and that a "shortcoming" of a driver the defendant employed caused damages. Lopez explained that an employer of Aldaba, the bus driver, would be liable under respondeat superior for Aldaba's conduct if Aldaba was acting within the course and scope of his employment at the time of the accident.

Zavala Plus's no-evidence challenges to these claims all involve the questions of whether appellants could produce any evidence that (1) Aldaba was Zavala Plus's employee and (2) he was acting in the course and scope of his employment at the time of the accident. Appellants contend that they raised genuine fact issues on both elements; Zavala Plus disagrees. We now turn to that dispute.

### c. Did the trial judge err by granting summary judgment on appellants' claims that Zavala Plus was vicariously liable for Aldaba's conduct under respondeat superior?

Appellants argue that the following summary-judgment evidence[2] raises a genuine fact issue regarding the elements of (1) Aldaba's employment status and (2) course and scope at the time of the accident:

---

[2] Zavala Plus argues that appellants have essentially forfeited their challenge to the no-evidence summary judgment because appellants' summary-judgment response did not specifically refer to the evidence that creates a genuine fact issue. *See Great Hans, LLC v. Liberty Life Serv. Corp.*, No. 05-20-00113-CV, 2021 WL 5822841, at *2 (Tex. App.—Dallas Dec. 8, 2021, no pet.) (mem. op.) (holding that nonmovant must "specifically identify the supporting proof it seeks to have considered by the trial court and explain why it demonstrates a fact issue exists"). We conclude that appellants' response was sufficient in this regard and reject Zavala Plus's argument.

- The Mexican police report about the May 6, 2018 accident indicates that the bus was the property of "ZAVALA PLUS LLC" with an address in Irving, Texas.

- A "Texas Apportioned License Cab Card" associated with the bus listed Zavala Plus as the "Registrant" and as the "Carrier Responsible for Safety." This card listed the "Reg Year" as 2017 and expired August 31, 2018.

- An excerpt from a March 2018–March 2019 insurance policy on the bus in question that listed Zavala Plus as the insured party.

- Zavala Plus's admission that at the time of the accident the bus in question was marked as follows on at least one side: "OPERATED BY: ZAVALA PLUS US DOT: 1295573 ICC MC: 523778 IRVING TX."

- Documents from Aldaba's personnel file that were apparently produced in discovery by Zavala Plus. The documents were covered with a printed email that apparently originated from "Zavala Plus Rio Grande <Zavala_plus@hotmail.com>". One document is a statement by Aldaba dated May 4, 2018—just two days before the accident. In the statement, Aldaba acknowledged that he made some mistakes in driving buses, including an accident in January 2018. He further said that he was suspended on January 14, 2018. His statement concluded, "[O]n Sunday 21/April/2018 I came to meet with the person in charge Nivardo Zavala to learn what was going on, because I was not aware of the reasons I was out of work since I am interested in my work, so I have to provide this written statement in which I accept to improve my work being this my last chance in the company Zavala Plus."

- Zavala Plus's corporate representative testified that she believed that in December 2015 Zavala Plus's president, Francisco Zavala, was using the email address zavala_plus@hotmail.com in his role as president.

- The police report from the accident said that the luggage "was given to the citizen Nivardo Zavala Beltran, who declared to be the legal representative of said company." Appellants also filed an excerpt of testimony by "Nivardo Zavala" in an October 2017 trial in a different case. In that testimony, Nivardo Zavala said

that he worked for Zavala Plus in Mexico as the "mechanics' boss." Appellants also filed a resume of "Nivardo Zavala Beltran" that said he was currently a maintenance supervisor for Zavala Plus. The resume is undated, but its contents indicate it was prepared in or after 2016.

Appellants make two arguments: (i) the evidence that Zavala Plus owned the bus triggered a summary-judgment-defeating presumption that the bus's driver was Zavala Plus's employee acting in the course and scope of his employment, and (ii) even without the presumption, the evidence raises a genuine fact issue on the elements of respondeat superior liability. We agree with appellants' second argument based on the following analysis.[3]

First, the evidence raises a genuine fact issue whether Zavala Plus owned the bus in question. For example, the Mexican police report about the accident recites that the bus was the property of "ZAVALA PLUS LLC" with an address in Irving, Texas.

Second, the evidence raises a genuine fact issue whether Aldaba was driving the bus at the time of the accident. In a response to requests for admissions, Zavala Plus admitted that fact.

Third, the evidence raises a genuine fact issue whether Nivardo Zavala Beltran, who was involved in the underlying events, was a Zavala Plus employee at

---

[3] Because we agree with appellants' second argument, we need not address their first argument. However, we have reviewed that argument, and we conclude that it is without merit because some of appellants' own summary-judgment evidence tends to show that Aldaba was not Zavala Plus's employee. *See Whittle v. Saunders*, 396 S.W.2d 155, 156–57 (Tex. App.—San Antonio 1965, no writ) (holding that the presumption of employment and course and scope "vanished" when contrary evidence was adduced).

the relevant times. Zavala Plus disputes this conclusion, but we disagree, based on the following evidence:

- In October 2017, "Nivardo Zavala" testified in a trial in a different case that he worked for Zavala Plus, LLC, which was a Texas company headquartered in Irving, Texas. He further testified that he worked for the company in Mexico as the mechanics' boss.

- The evidence includes an undated resume of "Nivardo Zavala Beltran" that (i) references a training certificate earned in 2016 and (ii) recites that Beltran was a maintenance supervisor for Zavala Plus LLC in Zacatecas, Mexico.

- The Mexican police report about the accident in question recites that the luggage on the bus "was given to the citizen Nivardo Zavala Beltran, who declared to be the legal representative of said company." In context, "said company" can reasonably be inferred to be Zavala Plus, LLC, previously identified in the report as the bus's owner.

Considering this evidence in its totality, we conclude that a reasonable factfinder could conclude both that (i) the same person is being referred to in all three pieces of evidence and (ii) Beltran was Zavala Plus's employee at the time of the bus accident.

Finally, we conclude that the evidence raises a genuine issue of material fact that Aldaba was driving the bus at the time of the accident in the course and scope of an employment relationship with Zavala Plus. First, the evidence includes a translation of a handwritten note by Aldaba, dated May 4, 2018, in which he mentions a meeting with "Nivardo Zavala" on April 21, 2018, and also acknowledges that he is on his "last chance in the company Zavala Plus." The totality

of the evidence permits an inference that Aldaba's April 2018 meeting was with Beltran, i.e., a Zavala Plus employee, according to the evidence discussed in the previous paragraph, and thus that Aldaba himself was a Zavala Plus employee only two weeks before the accident in question. And second, the police report recites that Beltran took charge of the luggage on the bus after the accident. This act supports an inference that Aldaba was acting in the course and scope of employment for Zavala Plus when he had the accident, because if he was not—that is, if he was driving the bus on behalf of Zavala Mexico or some other person or entity—Beltran and Zavala Plus would have had no interest or incentive in volunteering to become responsible for the passengers' luggage. Rather, Zavala Plus's only interest in the accident would have been to protect its property interest in the bus itself, and Beltran would have acted accordingly. Because Beltran instead undertook to protect the interests of the passengers by taking custody of the luggage, a reasonable inference arises he did so because Zavala Plus had some responsibility for the accident itself because Aldaba was acting in the course and scope of employment for Zavala Plus.

Zavala Plus argues that this analysis relies on improper inference stacking. *See Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 864 (Tex. App.—Dallas 2007, pet. denied) ("[A]n inference stacked only on other inferences is not legally sufficient evidence." (internal quotation and citation omitted)). We disagree. It is well settled that "a number of inferences may be drawn from a single fact situation," and the same circumstantial evidence can give rise to more than one

reasonable inference. *See id.* at 863–64. Here, the evidence regarding Beltran's employment status, his April 2018 meeting with Aldaba, and his conduct after the bus accident supports reasonable inferences that Aldaba was a Zavala Plus employee and that Aldaba was acting in the course and scope of his employment at the time of the bus accident.

Zavala Plus also cites summary-judgment evidence, principally deposition testimony by Jannet Zavala, tending to show that Aldaba was not a Zavala Plus employee, as well as other evidence that Zavala Plus had loaned the bus in question to Zavala Mexico before this accident occurred. But on no-evidence summary judgment we consider the evidence in the light most favorable to the nonmovants, crediting favorable evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *See Merriman*, 407 S.W.3d at 248. Under this standard, we conclude that a reasonable jury could disregard the contrary evidence cited by Zavala Plus.

For these reasons, we conclude that the trial judge erred by granting a no-evidence summary judgment against appellants on their respondeat superior theory.

### d. Did the trial judge err by granting summary judgment on appellants' claims against Zavala Plus for common-carrier liability under Zacatecan law?

Zavala Plus's sole no-evidence summary-judgment ground attacking appellants' common-carrier claims under Article 2037 of the Zacatecan Civil Code was that appellants had no evidence that the driver of the bus was a Zavala Plus

employee. We have concluded that the evidence raises a genuine fact issue on whether the driver was a Zavala Plus employee. Accordingly, we conclude that the trial judge erred by granting a no-evidence summary judgment against appellants on their claims against Zavala Plus for common-carrier liability under Article 2037.

e. **Did the trial judge err by granting summary judgment on appellants' claims against Zavala Plus for subjective liability under Zacatecan law?**

Zavala Plus obtained no-evidence summary judgment on appellants' subjective-liability claims under Zacatecan law on the grounds that appellants had no evidence (1) that Zavala Plus committed a licit or illicit act or (2) that any such act was the direct and immediate cause of appellants' injuries.

As to the first summary-judgment ground, appellants rely on evidence that the bus driver was driving at an unsafe speed at the time of the accident. Zavala Plus responds that this is an act by an alleged employee of Zavala Plus and not by Zavala Plus itself—essentially arguing that the summary judgment was proper at least as to any claims that Zavala Plus has *direct* subjective liability, as opposed to vicarious liability for the bus driver's subjective liability.

We have already concluded that appellants raised a genuine issue of material fact on their respondeat superior theory of vicarious liability. Accordingly, the trial judge erred to the extent she granted summary judgment against appellants on their claims that Zavala Plus is vicariously liable for the bus driver's subjective liability under Zacatecan law. We do not see any argument by appellants that the trial judge

–45–

erred by granting summary judgment on their claims directly against Zavala Plus for subjective liability, so we do not disturb that portion of the judgment. *See Ontiveros v. Flores*, 218 S.W.3d 70, 71 (Tex. 2007) (per curiam).

As for the second summary-judgment ground, appellants rely on the police report about the accident as evidence that the bus driver's conduct was a direct and immediate cause of appellants' injuries. The report indicates that the bus rolled over in the course of the accident and that an ambulance took passengers to a clinic in Concepcion del Oro, Zacatecas. This is sufficient evidence to raise a genuine fact question on the issue of causation of appellants' injuries.

### f. Did the trial judge err by granting summary judgment on appellants' claims against Zavala Plus for objective liability under Zacatecan law?

Zavala Plus obtained no-evidence summary judgment on appellants' objective-liability claims under Zacatecan law on the ground that appellants had no evidence that Zavala Plus was "making use" of the bus at the time of the accident.

In their opening brief, appellants challenge this summary judgment solely by arguing that Zavala Plus can be vicariously liable for the bus driver's conduct under an objective-liability theory because the driver was "making use" of the bus at the time of the accident. Zavala Plus does not dispute that it could potentially be held vicariously liable for an objective-liability claim but denies that it, a corporate entity, could be directly liable for "making use" of the bus. Although appellants address a possible direct objective-liability theory in their reply brief, we do not consider

arguments made for the first time in a reply brief. *See Veterinary Specialists of N. Tex., PLLC v. King*, No. 05-21-00325-CV, 2022 WL 406095, at *6 (Tex. App.—Dallas Feb. 9, 2022, no pet.) (mem. op.).

We have already concluded that appellants raised a genuine issue of material fact on their respondeat superior theory of vicarious liability. Accordingly, the trial judge erred to the extent she granted summary judgment against appellants on their claims that Zavala Plus is vicariously liable for the bus driver's objective liability under Zacatecan law. We do not disturb the portion of the judgment granting summary judgment on their claims directly against Zavala Plus for objective liability.

### 5. Did the trial judge err by granting summary judgment on claims that had been abated?

Finally, appellants argue that the trial judge erred by granting summary judgment on any claims asserted on behalf of the estate of Maria Soledad Varela de Lopez because the case was abated as to those claims when the trial judge granted summary judgment. We agree.

On April 26, 2022, the trial judge signed on order abating the case as to the estate's claims. The next day the judge signed an order administratively closing the case. On May 11, 2022, the judge signed an order vacating the administrative closure of the case but not lifting the abatement applicable to the estate's claims. On June 30, 2022, the judge signed a final summary judgment disposing of all claims in the case. On October 13, 2022, the judge signed an order lifting the abatement, and on

October 14, 2022, the judge signed a modified summary-judgment order that essentially repeated the substance of the June 30 order.

As discussed in Part I of this opinion, the June 30, 2022 summary-judgment order was a legal nullity to the extent it purported to dispose of the estate's claims because the case had been abated as to those claims. *See, e.g.*, *Amrhein v. La Madeleine, Inc.*, 206 S.W.3d 173, 175 (Tex. App.—Dallas 2006, no pet.). Zavala Plus argues that the modified summary-judgment order signed on October 14, 2022, cured the error. But this argument fails because the October 14 order was signed after the trial judge had lost plenary power to modify the June 30 judgment. Thus, that order is void and must be vacated. *See Polk v. La Hacienda Apt.*, No. 05-22-01236-CV, 2023 WL 2364974, at *1 (Tex. App.—Dallas Mar. 6, 2023, no pet.) (mem. op.) ("A judgment signed after the trial court's plenary power has expired is void."). As to the June 30, 2022 order, we conclude that the trial judge erred by granting summary judgment as to the claims asserted on behalf of the estate of Maria Soledad Varela de Lopez.

### 6.    Conclusion

We sustain appellants' second issue in part. The trial judge erred by granting summary judgment against appellant Jose Luis Varela as Representative of the Estate of Maria Soledad Varela de Lopez. The trial judge did not err by granting summary judgment against appellant Jose Hernandez. As to the remaining appellants, we reach the following conclusions:

–48–

- the trial judge did not err by granting summary judgment on (1) appellants' substantive claims asserted under Texas law, (2) appellants' claims for joint-enterprise liability, (3) appellants' claims under Zacatecan law for direct subjective liability, (4) appellants' claims under Zacatecan law for direct objective liability, and (5) appellant Pedro Rostro's common-carrier-liability claim under Zacatecan law; and

- the trial judge erred by granting summary judgment on appellants' claims under Zacatecan law for (1) subjective liability on a respondeat superior basis, (2) objective liability on a respondeat superior basis, and (3) common-carrier liability, except for appellant Pedro Rostro as noted above.

## IV. DISPOSITION

We vacate the trial court's October 14, 2022 Modified Order on Defendant Zavala Plus, LLC's Second Traditional and No-Evidence Motion for Summary Judgment.

We reverse the trial court's June 30, 2022 Order on Defendant Zavala Plus, LLC's Second Traditional and No-Evidence Motion for Summary Judgment as to all claims being prosecuted by appellant Jose Luis Varela as Representative of the Estate of Maria Soledad de Lopez (Deceased).

We also reverse the trial court's June 30, 2022 Order on Defendant Zavala Plus, LLC's Second Traditional and No-Evidence Motion for Summary Judgment as to the following claims:

- the claims by appellants Carmen Hernandez, Maricela Silva, and Eligio Silva under Zacatecan law for subjective liability on a respondeat superior theory, objective liability on a respondeat superior theory, and common-carrier liability; and

–49–

- the claims by appellant Pedro Rostro under Zacatecan law for subjective liability on a respondeat superior theory and objective liability on a respondeat superior theory.

We affirm the remainder of the trial court's June 30, 2022 Order on Defendant Zavala Plus, LLC's Second Traditional and No-Evidence Motion for Summary Judgment. We remand the case for further proceedings consistent with this opinion.

221077f.p05

/Dennise Garcia//
DENNISE GARCIA
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE LUIS VARELA AS
REPRESENTATIVE OF THE
ESTATE OF MARIA SOLEDAD
VARELA DE LOPEZ
(DECEASED), CARMEN
HERNANDEZ, JOSE
HERNANDEZ, MARICELA
SILVA, ELIGIO SILVA, AND
PEDRO ROSTRO, Appellants

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-07336.
Opinion delivered by Justice Garcia.
Justices Goldstein and Miskel
participating.

No. 05-22-01077-CV          V.

ZAVALA PLUS, LLC, Appellee

On the Court's own motion, we **WITHDRAW** our opinion and **VACATE** our judgment of March 26, 2024. This is now the judgment of the Court.

In accordance with this Court's opinion of this date, we **VACATE** the trial court's October 14, 2022 Modified Order on Defendant Zavala Plus, LLC's Second Traditional and No-Evidence Motion for Summary Judgment.

We **REVERSE** the trial court's June 30, 2022 Order on Defendant Zavala Plus, LLC's Second Traditional and No-Evidence Motion for Summary Judgment as to the following claims:

- all claims being prosecuted by appellant Jose Luis Varela as Representative of the Estate of Maria Soledad de Lopez (Deceased);

- the claims by appellants Carmen Hernandez, Maricela Silva, and Eligio Silva under Zacatecan law for subjective liability on a respondeat superior theory, objective liability on a respondeat superior theory, and common-carrier liability; and

- the claims by appellant Pedro Rostro under Zacatecan law for subjective liability on a respondeat superior theory and objective liability on a respondeat superior theory.

In all other respects, we **AFFIRM** the trial court's June 30, 2022 Order on Defendant Zavala Plus, LLC's Second Traditional and No-Evidence Motion for Summary Judgment. We **REMAND** the case for further proceedings consistent with the opinion.

It is ordered that each party bear its own costs of this appeal.

Judgment entered this 21st day of October, 2024.